# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREAT LAKES REINSURANCE (UK) PLC,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID'S CONSTRUCTION, INC.,<br>JERRY SIMPSON, and<br>MARY SIMPSON,<br><br>    Defendants. | Case No. CIV-15-024-RAW |

## ORDER & OPINION[1]

Great Lakes Reinsurance (UK) PLC (hereinafter "Great Lakes") filed its Complaint on January 27, 2015, seeking a declaratory judgment. Great Lakes asserts that an insurance policy it issued to David's Construction, Inc. (hereinafter "DCI") does not apply to the claims brought by the Simpsons in a suit against DCI for damages they allege DCI caused while constructing their new home between August 24 and November 30, 2012.

Now before the court is Great Lakes' motion for summary judgment [Docket No. 49]. Great Lakes argues that the policy it issued to DCI covered remodeling or handyman work, but not new construction. DCI argues that the policy covers it for all contracting work. The Simpsons join in DCI's response to the motion. For the reasons set forth below, the motion is hereby granted.

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

**UNDISPUTED MATERIAL FACTS**[2]

### The Underlying Suit

On or about August 24, 2012, DCI entered a contract with the Simpsons whereby DCI agreed to build a three-bedroom home for the Simpsons on the Simpsons' property. On August 23, 2013, the Simpsons filed a suit in an Oklahoma state court alleging that the home DCI built pursuant their agreement is defective and has structural problems due to DCI's defective workmanship and poor construction practices. The Simpsons brought the following four causes of action against DCI: (1) negligence; (2) breach of contract; (3) breach of warranty; and (4) violation of the Oklahoma Consumer Protection Act.[3] At the time of the Simpsons' alleged loss, DCI was insured by Great Lakes under policy number GLN001606. See Docket No. 49, Exh. 3.

### The Policy

At the top of the first page of the Policy in effect at the time of the alleged injury is the policy number and the heading "Common Policy Declarations." Docket No. 49, Exh. 3, p. 2 of 40. Directly below that heading is DCI and DCI's address as the named insured. Id. Directly below that is the policy period – April 14, 2013 to April 14, 2013. Id. Directly below that is the line: "Business Description: Contractor." Id.

---

[2] In its response, DCI listed fifteen other "material undisputed facts," including for example the fact that DCI has built homes for over 30 years. Since the court finds below that the Policy is unambiguous, those facts are not material to the court's analysis. Absent an ambiguity, "the intent of the parties must be derived solely from the language of the insurance contract." MIC Prop. and Cas. Ins. Corp. v. International Ins. Co., 990 F.2d 573, 575 (10th Cir. 1993).

[3] On August 24, 2015, the Simpsons amended their Petition in the underlying action, adding three subcontractor defendants and a fifth cause of action for breach of third party beneficiary contracts.

On page fourteen of the policy, the "Commercial General Liability Part Declarations" page, under "Classification" is listed "Remodeling rated as: Handyman." Id. at 15 of 40. The Policy further states in pertinent part:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement
    a. We will pay those sums that the insured becomes legally obligated to pay as damages *to which this insurance applies*. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit seeking damages for . . . "property damage" *to which this insurance does not apply*. . . .

Id. at 16 of 40 (emphasis added).

The Policy includes a "Combination Endorsement." The endorsement states in pertinent part:

4. Classification Limitation
This insurance does not apply to . . . "property damage" . . . arising out of those operations or premises *which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements*.

Id. at 27 of 40 (emphasis added).

**STANDARD OF REVIEW**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." Kimzey v. Flamingo Seismic Solutions, Inc., 696 F.3d 1045, 1048 (10th Cir. 2012). Of course, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Additionally, the court "need not consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**ANALYSIS**

The relationship between Great Lakes and DCI is contractual in nature. See First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 928 P.2d 298, 302 n. 6 (Okla. 1996). When an insurance policy's "*terms are unambiguous and clear*, the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1033 (Okla. 2002) (emphasis in original). "The parties are bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed." Id.

"A contract is ambiguous when and only when it is reasonably and fairly susceptible of different constructions or meanings." Cinocca v. Baxter Labs., Inc., 400 F.Supp. 527, 532 (E.D. Okla. 1975). "The fact that the parties disagree about the meaning of a contract does not make it ambiguous." Thrifty Rent-A-Car System, Inc. v. Toye, No. 93-5183, 93-5205, 1994 WL 175692, at *2 (10th Cir. April 19, 2994)(unpublished).

4

The Policy language above clearly and unambiguously excludes coverage for anything beyond "Remodeling: rated as Handyman." DCI argues, however, that because the Policy uses the terms "contractor," "remodeler" and "handyman," and fails to define two of those terms, the Policy is ambiguous. DCI also argues that the term "contractor" includes new construction.

"The absence of an express definition of a word within the policy does not necessarily render the word ambiguous." Certain Underwriters at Lloyds London v. B3, Inc., 262 P.3d 397 400 (Okla. App. Div. 1 2011) (citation omitted). "Contractor" is a broad and general term. The Merriam-Webster dictionary defines "contractor" as "a person who is hired to perform work or to provide goods at a certain price or within a certain time."[4] A remodeler or handyman fall under the umbrella of that definition. The court recognizes that Merriam-Dictionary's definition of "contractor" includes the example of "one that contracts to erect buildings." Nevertheless, as Great Lakes illustrates in its reply with a non-exhaustive list of specific jobs that fall under the general term "contractor," that term is very broad.

The Policy unambiguously defines DCI's work as "Remodeling rated as: Handyman." The fact that the Policy also refers to DCI as a "contractor" does not include coverage for other specific jobs under that broad and general term. It has long been held that the "[s]pecific references in contracts control the meaning of more general terms." Toye, at *4 (interpreting a contract under Oklahoma law). See also First Nat. Bank of Ardmore v. Gillam, 134 Okla. 237, 264 (Okla. 1927). The Policy is unambiguous in its coverage of only DCI's work as a remodeler or handyman.

---

[4] http://www.merriam-webster.com/dictionary/contractor.

**CONCLUSION**

Accordingly, the motion for summary judgment [Docket No. 49] is hereby GRANTED.

**IT IS SO ORDERED** this 18th day of December, 2015.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**